THE CHEMICAL COMPANY OF CANTON v. D. T. JOHNSON and C. M. BUSBEE, Trustee.

*Registration— Trust—Mortgage—Conditional Sale— Vendor and Vendee.*

Where goods were sold and delivered under a contract in which it was stipulated that the vendee should deliver to the vendor the notes taken by the vendee from purchasers of such goods, to be held by the vendor " as collateral security for the payment of the purchase money to him," and further, that such " goods, as well as the proceeds therefrom, are to be held in trust by him for the payment of the price to the vendor:" *Held,*

1. That this agreement was not a mortgage, nor a conditional sale, but an absolute sale of the goods, and its registration was not necessary.

2. That by virtue of the contract, a trust was raised in the vendee as to the *proceeds* of the sale, in favor of the vendor, which would be enforced against creditors and purchasers, though the contract was not registered.

(Mr. Associate Justice MERRIMON dissenting).

This is a CIVIL ACTION, which was tried before *Merrimon, Judge*, at August Term, 1887, of WAKE Superior Court.

The plaintiff, a company formed under the laws of Maryland, and engaged in the manufacture and sale of an agricultural fertilizer known as Baker's Standard Guano, and the defendant Johnson, entered into the following agreement:

"BALTIMORE, January 17th, 1885.

" We have this day sold to Mr. D. T. Johnson, of Raleigh, N. C., the following brands of fertilizer, on terms and conditions named below, viz:

" 40 tons of Baker's Standard Guano, at $29.50 per ton, 2,000 pounds, or as much additional as may be mutually satisfactory.

" We will deliver the above goods, free on board, at Raleigh, N. C., in bags. Settlement to be made by notes payable November 15th, and December 15th, 1885, at Franklin Bank, Baltimore. On May 1st next, or sooner if possible, D. T. Johnson agrees to deliver to us, or our order, notes of all purchasers to whom sales of these goods may have been made, whose notes shall have been taken, and a list of all accounts for the sale of such goods where they have been sold on open account and no notes shall have been taken, and for gross amount of the sales of the same, to be held by us as collateral security for payment of his notes as stated above, and all of the above mentioned goods as well as the proceeds therefrom, are to be held in trust by him for the payment of his notes to us. And all proceeds of said goods as collected must be first applied to the payment of his notes due us, whether the same have matured or not.

" D. T. Johnson to pay for all goods shipped on his orders to amount mentioned in contract, and we to be at no expense whatever after delivery of goods as agreed.

" The collaterals will be returned in time for collection. In sending same to the company, place nominal value of $25 on each package.

" This contract subject to suspension by fire or unavoidable accidents at sellers' works or storage warehouses.

" The above contract subject to approval of home office.

" Relative to this contract, no agreement or provision outside of those embodied in the contract is recognized or con-

firmed, unless it is a matter of arrangement signed in writing.

"Signed in duplicate. Chemical Co., of Conton.
"C. G. HEIM.
" I accept the terms and conditions of above contract.
"(Signed) D. T. JOHNSON."

This instrument was not registered.

The guano was delivered in pursuance of the contract, and has been sold by Johnson for notes and upon open account to various purchasers.

The latter finding himself embarrassed with debts, on March 10th, 1885, executed a deed to the defendant, Charles M. Busbee, wherein he assigns, among other property owned by him, the claims he then held against different persons who had bought portions of the fertilizer, in trust to secure various creditors, in the order of the priorities therein set out.

The present action is to assert a claim to this fund, and to compel the trustee to account for and pay over such of them, or of their proceeds, as passed into his hands.

Upon the trial, the above facts being in proof, the Court intimated that the action could not be maintained, because the contract between the plaintiff and Johnson had not been registered. In deference thereto the plaintiff suffered a nonsuit, and appealed.

*Messrs. E. R. Stamps* and *A. W. Haywood,* for the plaintiff.
*Messrs. C. M. Busbee* and *A. Jones,* for the defendants.

SMITH, C. J., (after stating the case as above). The only question before us is as to the character and construction of the agreement, and whether it is an instrument required to be registered, and inoperative and void unless and until so registered, against creditors and purchasers. *The Code,* §1254.

We are unable to concur in the opinion of the Court that the contract is within the purview of the enactment cited, or of the mischiefs which were remedied by it, and the amendatory act which extends it to conditional sales of personal property. *The Code*, §1275.

In form it is largely executory in its provisions, requiring the vendor to take and hold all securities received upon sales of the guano for payment of the original purchase money. This trust, at least as between the parties, attaches to this substituted fund, and it can only be conveyed (except in certain cases) in the same plight to another.

There are present none of the features and essential elements of " a deed of trust or mortgage," as there were none before the new statute in conditional sales of personal property. The statute was intended to meet this latter class of cases, because they were in legal effect of the nature of mortgages, the legal title being retained to secure payment of the price for which the property was sold.

Again, if it were otherwise, the want of registration (for the contract would be valid as between the parties without registration) would apply to the articles sold, and as this has all been disposed of, would not reach the choses in action taken in exchange. Can it be supposed that as soon as a sale is made, it must be put in writing, and so *toties quoties*, so that upon inspection of the registry the attaching trust to the fund substituted would appear?

In form and fact the property passes from the plaintiff to the defendant Johnson, and if the expression "all of the above mentioned goods, as well as the proceeds therefrom, are to be held in trust by him for the payment of his notes to us," creates a trust in the sense of the statute, it accompanies and attaches to the property conveyed, and hence the plaintiff would become mortgagor and Johnson mortgagee in their relations to each, and in such case the want of registration avoids the operation of the instrument "as against

creditors or purchasers for a valuable consideration from the donor, bargainor or mortgagor," but from the registration, &c., §1254, but not creditors or purchasers of the mortgagee ; in other words, for such creditors and purchasers as the statute refers to. The title does not pass but remains in the mortgagor as if no such conveyance had been made. The effect then would be, to leave the property in the mortgagor for the benefit of his creditors or vendees for value, and none claiming under the Chemical Company are assailing the transfer as obstructing the enforcement of demands against it, and none others can, for the alleged defect. As then, the defendant, Johnson, transferred these claims clothed with the trust he had assumed, and which is valid and effectual as against him, they pass into the hands of his assignee in the same plight and condition, and must be accounted for in like manner by the latter.

It is suggested that the contract may admit of a construction reversing the relations of the parties, and giving the character of mortgagor to Johnson, by virtue of his stipulations as to the holding and disposition to be made of the property. But in our opinion it will not bear this interpretation. There is but one transfer of property, and the trust declared and assumed is an incident to the conveyance. In most deeds of trust such is the case. The trust is declared by the bargainor, the estate accepted subordinate thereto, and the trusts are equally obligatory on the mortgagee, whether he in terms agrees to carry the trust into effect or not. His acceptance of the estate fixes upon him this duty. The stipulations therefore of Johnson do not alter the nature of the transaction, but it remains a transfer with the restrictions imposed by the company that made it, and they are not removed by his general assignment for the benefit of his creditors.

There is error and must be a new trial, to which end this will be certified to the Superior Court.

MERRIMON, J., Dissenting. I cannot concur in the construction my brethren have given the contract in writing between the plaintiff and the defendant Johnson. It seems to me obvious that the former sold and intended to sell to the latter forty tons of *Guano* at the price mentioned, and he, in consideration thereof, was to execute to the plaintiff his promissory notes for the price, payable at the times and places specified. It appears that the *guano* was delivered. It does not appear affirmatively that Johnson executed his notes, but nothing to the contrary appearing, the inference is he did.

As a security for the payment of the notes, Johnson agreed, on his part, that the plaintiff should have a lien—in effect a chattel mortgage—upon the notes and accounts he might obtain for so much of the *guano* as he might be able to sell, and likewise, upon so much of the *guano* itself as he might fail to sell, and the notes and accounts, after the lapse of time specified, were to be delivered to and held by the plaintiff as "collateral security for the payment of" Johnson's notes to it. In effect the plaintiff sold Johnson the *guano* and took his promissory notes therefor, and at once took a mortgage of the property so sold to secure the payment of the notes.

The nature of the transaction, as well as the terms of the agreement, show that it was not the purpose of the plaintiff to place the *guano* in the possession and control of Johnson as its agent, charged with an express trust and power to sell the same and account to it for the proceeds of such sale. There is nothing appearing that reasonably implies such purpose. If this were so, then the words and phraseology which ordinarily plainly imply a contract of sale, must, it seems to me, be treated as meaningless, and the notes given by Johnson to the plaintiff were an empty and rediculous sham

If Johnson, having purchased the *guano*, had executed a formal mortgage of it or a deed of trust, conveying it to a trustee, to secure the payment of his notes to the plaintiff,

then there could be no question that such mortgage or deed of trust would not be operative as against creditors and subsequent purchasers for value.

The agreement in question was, in my judgment, in legal effect, though not in form, such a security, and it was not registered.

If the agreement could be treated as effectuating a conditional sale, and it cannot be so treated, the result would be the same, because in that case, it would be ineffectual as against creditors and subsequent purchasers for value without registration.

Error.                                        Reversed.