THE CHEMICAL COMPANY OF CANTON v. D. T. JOHNSON AND C. M. BUSBEE, Trustee.

*Contract—Evidence—Judge's Charge—Issues—Trust and Trustee—Costs.*

1. Where a written contract is uncertain in its terms, or where it is disputed which of several papers executed by the parties embodies it, it is competent to prove what was done and said in the preliminary negotiations in order to arrive at the agreement.

2. If there is no material conflict in the evidence offered upon the trial of an issue, it is not erroneous to instruct the jury that, if believed, a verdict should be rendered accordingly.

3. Where the parties agree to the submission of an issue, they will be concluded by the verdict, though the issue may not be such as ought to have been submitted.

4. A trustee, as against those for whose benefit the trust is created, will be allowed to apply so much of the fund to the payment of costs and expenses, including counsel fees, as may be necessary to protect it, but he will not be allowed such disbursements against one who establishes an adverse title to the property.

This is a CIVIL ACTION which was tried before *Shipp, J.*, at April Term, 1888, of WAKE Superior Court.

On the 17th day of January, 1885, the plaintiff, by its agent, one Vick, and the defendant Johnson, signed, in duplicate, the paper hereinafter set out as Exhibit A.

Johnson testified, however, that the portion printed in italics was erased—" scratched out"—in the copy retained by him, and this was done with the consent of the plaintiff's agent. Upon the receipt by plaintiff, at its place of business in Baltimore, of the copy forwarded them by its agent, it prepared and sent Johnson the paper set out as Exhibit B, as a more satisfactory form of the agreement. Johnson signed this, after erasing the provision therein similar to the one he alleged had been eliminated in Exhibit A.

Johnson testified that at the time he returned this last paper, he wrote the plaintiff stating his reasons for refusing to transfer the notes and mortgages he might take from his customers as collaterals.

The plaintiff denied having ever received such letter.

The correspondence resulting from the negotiations between the parties, and which is herein set forth, was admitted in evidence against the objection of defendant, who contended that it was in conflict with the stipulations in Exhibit B, and that the promise made or implied therein being without consideration, could not be made the basis of a contract. They also objected to the admission of Exhibit A, as being too vague, &c.

The incorporation and organization of the plaintiff was admitted, as was also that the defendant Johnson received 40 tons of guano from the plaintiff, under the contract be-

tween them, and that he sold the same. He subsequently executed a deed of assignment to the defendant C. M. Busbee, in trust to sell and apply the proceeds of sale to certain debts therein mentioned, and it appears that the defendant Busbee now has in his hands, as such assignee, the sum of $965.54 in money, and some notes, proceeds derived from the sale of guano shipped defendant Johnson by plaintiff, and sold by said Johnson as aforesaid.

After hearing the evidence, his Honor charged the jury as follows, viz: "If the jury believe the testimony in this case, taking it altogether, the plaintiff is entitled to recover a verdict declaring Mr. Busbee to be a trustee for the benefit of plaintiff," to which charge the defendants excepted.

The following issue was submitted to the jury, viz.: "Does the defendant, C. M. Busbee, hold the fund arising from the sale of the guano, mentioned in the complaint, in trust for the plaintiff?" who, for their verdict, answered, "Yes."

EXHIBIT "A."

RALEIGH, N. C., January 17th, 1885.

We have this day sold to Mr. D. T. Johnson, of Raleigh, N. C., the following brands of fertilizers, on terms and conditions named below, viz: ____ tons of Baker's Standard Guano at $29.50 per ton, 2000 lbs. Delivered at Raleigh, N. C., in car load lots, or as much additional as may be mutually satisfactory.

We will deliver the above goods free on board at Raleigh, N. C., in bags, bbls. Settlement to be made by note, payable November 15th and December 15th, '85, at Baltimore.

*On May 1st next, or sooner if possible, agrees to deliver to us or our order, notes of all purchasers to whom sales of these goods may have been made, and for the gross amount of the sales of the same, to be held by us as collateral security for payment of notes as stated above, and all of the above mentioned goods as*

101—15

*well as the proceeds therefrom are to be held in trust by ____ ____ ____ ____, for the payment of ____ ____ ____, notes to us.*    *And all proceeds of said goods as collected must first be applied to the payment of ____ ____ notes due us, whether the same have matured or not.*

He is to pay for all goods shipped on his orders to amount mentioned in contract, and we to be at no expense whatever after delivery of goods as agreed.

The collaterals will be returned in time for collections. In sending the same to the Company, place nominal value of $25 on each package. This contract subject to suspension by fire or unavoidable accident at seller's works, or storage warehouses.

The above contract subject to approval of home office.

(Signed in duplicate.)

CHEMICAL CO. OF CANTON,

Per S. W. Vick, *Agent.*

I accept the terms and conditions of above contract.

D. T. JOHNSON.

EXHIBIT " B."

BALTIMORE, January 17th, 1885.

We have this day sold to Mr. D. T. Johnson, of Raleigh, N. C., the following brands of fertilizers, on terms and conditions named below, viz:  10 tons of "Baker's Standard Guano, at $29.50 per ton, 2,000 lbs., or as much additional as may be mutually satisfactory.

We will deliver the above goods free on board at Raleigh, N. C., in bags. Settlement to be made by notes, payable November 15th and December 15th, 1885, at Franklin Bank, of Baltimore.

D. T. Johnson to pay for all goods shipped on his orders to amount mentioned in contract, and we to be at no expense whatever after delivery of goods as agreed.

The collaterals will be returned in time for collection.   In sending same to the Company, place nominal value of $25 on each package.

This contract subject to suspension by fire or unavoidable accidents at seller's works or storage warehouses.

Relative to this contract, no agreement or provision outside of these embodied in the contract is recognized or confirmed, unless it is a matter of arrangement signed in writing.

The above contract subject to approval of home office.

(Signed in duplicate.)

CHEMICAL CO. OF CANTON,<br>C. G. Heim.

I accept the terms and conditions of above contract.

D. T. JOHNSON.

EXHIBIT " C, No. 1."

RALEIGH, N. C., January 19th, 1885.

*Chemical Company, Canton :*

GENTLEMEN : I assigned a contract with your Mr. Vick, which you doubtless have ere this, which, if satisfactory, you can assign and return.

The only difference is in the sending of notes to you.   I have no objection at all, only some I sell on open account and take no notes.   Am willing to send what I have.   I do not expect to sell but a small quantity.   Hoping to hear from you soon.   I am respectfully yours,

D. T. JOHNSON.

BALTIMORE, January 21st, 1885.

*D. T. Johnson, Esq., Raleigh, N. C.:*

DEAR SIR : We have your favor of 19th inst., and note contents.   We have the contract made with our Mr. Vick, but it would be more satisfactory to us if you would sign and return to us the contract we sent you for ten tons of

" Baker's Standard Guano."   In regard to the notes, you can send us what you take, and assign us a list of the open accounts which will be satisfactory to us.   Yours truly.

CHEMICAL CO. OF CANTON.

K.

RALEIGH, N. C., January 26th, 1885.

*Chemical Company of Canton :*

Yours in regard to contract to hand.   We will try and carry out the spirit and letter of contract—do not expect to make large sales, but will do what we can with parties who we consider entirely safe.

The balance due by D. T. J. & Co., will be paid on or about the 15th of February.   We have granted an indulgence on some paper due, until that time; the weather has been so bad, business has been at a stand still.   It seems to be clearing up now.   Yours,        D. T. JOHNSON.

BALTIMORE, January 28th, 1885.

*Mr. D. T. Johnson, Raleigh, N. C. :*

DEAR SIR: We note your favor of the 26th inst.   You may not fully have considered our last letter to you.   What we requested was that you sign and return to us the contract that we sent to you from this office—we would then send back to you the one you gave Mr. Vick.   The contract we sent you is for ten tons, or as much more as may be mutually satisfactory, while Mr. Vick's is for no quantity at all, and virtually no contract.   Your compliance will oblige.

Yours respectfully,        CHEMICAL CO. OF CANTON.

A.

BALTIMORE, February, 2d, 1885.

*Mr. D. T. Johnson, Raleigh, N. C. :*

DEAR SIR: Your contract properly signed is to hand. There is one thing about it we can't agree to, you have

crossed out that portion which says you are to give farmers' notes as collaterals. The contract you made with Mr. Vick and also last year's, called for collaterals; so we have crossed out your scratches and expect you to send what farmers' notes you take, and those from whom you take no notes we will want a list of. Your car will be shipped to-morrow.

Yours truly,

CHEMICAL CO. OF CANTON.

RALEIGH, N. C., February 7th, 1885.

*Chemical Co. of Canton, Baltimore:*

GENTS: Please ship to Capt. B. M. Collins, Ridgeway, N. C., twenty (20 tons) Baker's Standard Guano, and oblige,

D. T. JOHNSON,<br>W.

BALTIMORE, February 9th, 1885.

*Mr. D. T. Johnson, Raleigh, N. C.:*

DEAR SIR: Your favor of the 7th to hand. We have booked your order for 20 tons and we will give it our attention. We suppose you have received ours of the 2d, and note what we say about collaterals. Yours truly,

CHEMICAL CO. OF CANTON,<br>MARSDEN.

BALTIMORE, February 10th, 1885.

*Mr. D. T. Johnson, Raleigh, N. C.:*

DEAR SIR: We inclose corrected contract which agrees with our mutual understanding of the same. Please sign and return to us. We regret to trouble you in this; you will remember that contract signed by you was altered by crossing out a portion of it. Your prompt attention will oblige.

Yours truly,

CHEMICAL CO. OF CANTON,<br>W. J. D.

CHEMICAL CO. *v.* JOHNSON.

BALTIMORE, February 14th, 1885.

*Messrs. D. T. Johnson & Co., Raleigh, N. C.:*

GENTLEMEN:—As previously directed by you we have to-day drawn on you at sight for $301.97, the balance due on your note that matured January 1st, 1885. Please protect same and oblige. We sent to you a few days since for your signature our contract for this year drawn in a more regular form and more comprehensive than previous one. Would you kindly sign and return it to us as requested in our letter that enclosed the same.

Yours respectfully,

CHEMICAL CO. OF CANTON.

RALEIGH, N. C., February 18th, 1885.

*Chemical Co. of Canton:*

GENTLEMEN:—Yours to hand and noted. Will honor draft. We told your Mr. Vick that we would not sign a contract to deliver farmers' notes as collateral for what we sold, and gave as a reason this: that we sold a good deal on open account and did not take notes, hence, not having notes, we could not give them; told him and you that we would send you what we did take and give you a list of purchasers. Hoping this will be entirely satisfactory,

I remain, as ever,          D. T. JOHNSON.

BALTIMORE, February 19th, 1885.

*Mr. D. T. Johnson, Raleigh, N. C.:*

DEAR SIR:—Your letter of the 18th inst. to hand, stating you would send us what notes you did take and give list of purchasers of balance. This is satisfactory, and we have attached this letter to the contract. Awaiting further favors,

We are yours truly,

CHEMICAL CO. OF CANTON,
W. J. D.

Judgment was rendered on the verdict for the plaintiff, from which the defendant appealed.

*Messrs. A. W. Haywood* and *E. R. Stamps,* for the plaintiff.
*Messrs. A. Jones, F. H. Busbee* and *C. M. Busbee,* for the defendant.

MERRIMON, J.   The plaintiff alleges, in its complaint, the written agreement set forth above as " Exhibit B," as modi-. fied by the other writing set forth above as " Exhibit C, No. 1 ;" and its alleged cause of action is founded on that agreement and alleged breaches thereof in respects specified. The defendants deny the agreement as alleged, and the evidence produced on the trial bore mainly on the issue raised by the pleadings in that respect.

The exceptions to the admission in evidence of the original paper writing and letters, cannot be sustained.   They were competent evidence of the principal parties themselves to show that they executed, accepted, assented to and acted upon the agreement as alleged.   Each of these writings tended more or less strongly to prove that the parties did so, and the mere fact that they went to show how, when and why the parties came at last to assent and consent to such agreement, cannot destroy their competency as evidence. The first agreement, " Exhibit A," was not acceptable to the parties—the objections to it tended to show that these were obviated in the substitution and adoption of " Exhibit B," as modified by " Exhibit C, No. 1," and the letters went to show the nature and extent of the objection on both sides, and that these were removed and the agreement was accepted and concluded.

The evidence of the defendant Johnson was not in any material respect in conflict with that produced by the plaintiff; on the contrary, it was substantially in harmony with it.   He testified as to his objection to " Exhibit B," and other

evidence—the correspondence—showed that his objection was removed, and he expressed his willingness to do as he said in " Exhibit C, No. 1," he would do.

There was no material conflict in the evidence. Accepting it all as true, the agreement was as alleged in the complaint, and in all material respects as alleged it had been interpreted and its meaning and effect settled by this Court in *Chemical Co..v. Johnson,* 98 N. C., 123.

The issue submitted to the jury was very general in its bearing upon the pleadings, and scarcely a proper one ; but as there was no objection to it, it must be taken that it was submitted by consent of the parties; they were content to reach the merits of the matters of fact at issue through and by it, and they must be concluded by the verdict.

The instruction of the Court to the jury was very broad and comprehensive, but it does not appear to be erroneous. Taking the evidence altogether as true, the verdict was a proper one. It was not such in its bearings upon the issue as required that it be presented to the jury in various conflicting views of it; it was in substance consistent and harmonious, and fit to be considered and taken altogether as true or false.

The exception to the instruction is very indefinite—quite as broad as the instruction, and comprehensive as the issue. No particular error is assigned. It is questionable whether or not it could be considered.          Judgment affirmed.

PLAINTIFF'S APPEAL.

The Court in its judgment allowed the appellee, Busbee, certain commissions for selling the guano to which there was no objection, and also, " the sum of one hundred dollars to pay counsel fees," to be paid out of the fund mentioned. To this allowance the plaintiffs excepted and appealed.

This Court decided in *Chemical Co.* v. *Johnson,* 98 N. C., 123, that the plaintiff sold the guano mentioned to the defendant

Johnson, coupled with the trust, that the latter would sell it and apply the proceeds of the sale to the payment of his several promissory notes made to the plaintiff, coming due successively at different times, for the purchase money thereof. Johnson therefore had no right or authority to sell the guano to the appellee, Busbee, trustee, for the purposes specified in the deed of trust made to him; and so neither the guano nor the proceeds of the sale thereof became affected by the trust created by that deed, nor did they become part of the trust fund to be administered by the trustee; but they were to be applied to the payment of the plaintiff's notes mentioned above.

The plaintiff did not desire that the appellee trustee should have or sell or in any way interfere with the guano. On the contrary, it opposed his interference with and claim to it, and insisted upon its right to have it applied to the payment of its claim against Johnson. The appellee denied its claims, and thus drove it to bring this action to assert its rights. The appellee made defence in good faith, not at the request or instance of the plaintiff, but against its will, and for the benefit of those creditors of Johnson whose debts were provided for and secured by the deed of trust, and to prevent and defeat the plaintiff's recovery. The counsel employed and paid by the appellee were employed for that express purpose, and in no sense for the benefit or advantage of the plaintiff. Shall the latter be thus required to pay the counsel of the defendant to defeat its right and its action?

But it is said it was the duty of the trustee to resist the plaintiff's demands, and he ought in doing so to be allowed his reasonable outlay for counsel. This may be granted, but at whose cost? Surely not at that of the plaintiff, whose right he was contesting, but plainly at the cost of the creditors interested in increasing the trust fund out of which their debts were to be paid.

The appellee in good faith, under a misapprehension of his right to do so, sold the *guano*, and had in hand the proceeds of the sale. For his services in selling it, he was allowed compensation, and the plaintiff did not object, upon the just ground, no doubt, that it ought to pay for such services as it had the benefit of, but such proceeds of sale were no part of the trust fund, nor were they affected by the trust the appellee was charged with by the deed, certainly, as they were insufficient to pay the claims of the plaintiff.

We cannot hesitate to decide that the allowance complained of was unwarranted, and the judgment must, as to it, be reversed.

It is further assigned as error, that the Court directed the trustee to pay his part of the costs of this action out of the fund in his hands referred to above. We do not so understand the judgment: it directs such costs to be paid out of any funds in his hands as trustee of the deed of trust. Otherwise, there would be error. The appellee is not a trustee of an express trust as to the plaintiff in this action, and is not entitled, as against him, to the benefit of the statute. (*The Code*, § 535).

There is error.                                                    Error.