## ALBERT PICK CO., Inc., v. TRAVIS.

District Court, E. D. New York.
Dec. 26, 1933.

Verne R. Foley, of New York City, for plaintiff.

Irving C. Maltz, of Brooklyn, N. Y., for defendant.

MOSCOWITZ, District Judge.

This is an action by Albert Pick Company, Inc., on behalf of itself and other creditors of Charles H. Mentzinger, against Eugene M. Travis as trustee in bankruptcy of the said Mentzinger, to impress a trust upon certain moneys now in the possession of the said trustee and upon a further certain sum of money when and if the same is acquired by the trustee.

On or about the 2d day of May, 1930, the said Mentzinger entered into a contract with the city of New York, acting through the board of higher education of the city of New York, to furnish labor and materials for public improvements in the construction of a social unit for Hunter College.

On or about November 10, 1930, Albert Pick-Barth Company, Inc., by and through and in the name of the John Van Range Company (the John Van Range Company and Albert Pick-Barth Company, Inc., being subsidiaries of Albert Pick & Co., an Illinois corporation) entered into a subcontract with said Mentzinger for the furnishing and installation of certain cafeteria and kitchen equipment in the said Power House—cafeteria—social unit of said Hunter College; that the said contract was for the sum of $33,500, all of which has been paid with the exception of $10,659.60.

On the 26th day of September, 1932, the city of New York paid the said Mentzinger out of funds applicable to the payment of said contract between Mentzinger and the city of New York the sum of $10,724.86, which sum constituted the final payment on the said contract, exclusive, however, of the sum of $2,010.04, which was a retained percentage customarily withheld on city contracts.

On the 27th day of September, 1932, the said Mentzinger deposited approximately $9,000 of the moneys received from the city of New York in his bank account maintained in the Bank of Manhattan Trust Company. On the same day, and subsequent to the deposit of the money, one Cliston Corporation presented to the bank for payment a certain demand note dated November 6, 1931, in the sum of $7,000, made and executed by the said Mentzinger, which said note and interest due thereon was on the 28th of September, 1932, paid by the said Bank of Manhattan Trust Company to said Cliston Corporation.

It has been stipulated that the Cliston Corporation was not a subcontractor under said Mentzinger, nor did it furnish labor or materials to the said Mentzinger, nor did it act as architect, engineer, or surveyor in connection with the Hunter College job, the subject of the contract between Mentzinger and the city of New York.

At the time that the $9,000, part of the payment received by Mentzinger from the city of New York, was deposited by him in his bank account, there was a balance in the said account of approximately $110. It has been stipulated that the said sum of $7,000 received by the Cliston Corporation was paid out of funds in the said account.

On the 27th day of October, 1932, an in-

voluntary petition in bankruptcy was filed against Mentzinger. On or about the 10th day of November, 1932, Mentzinger was duly adjudicated a bankrupt. On the 20th day of December, 1932, Eugene M. Travis was duly appointed trustee in bankruptcy, and thereafter duly qualified as such trustee.

Subsequently, Eugene M. Travis, as trustee, demanded that the Cliston Corporation return the said moneys on the ground that the moneys so received constituted a preferential payment in violation of the bankruptcy laws of the United States.

On the 1st day of February, 1933, the Cliston Corporation offered to pay to the said Eugene M. Travis, as trustee, the sum of $5,000 in settlement of the claim against it. At a meeting of the creditors called for the purpose of passing upon the said offer, the plaintiff herein, on behalf of itself and other creditors similarly situated, consented to the acceptance of the said offer without prejudice to it and such creditors' claims that the said moneys constituted trust funds.

On the 27th of March, 1933, the said Cliston Corporation paid to Eugene M. Travis, as trustee, the sum of $5,000.

The question presented is whether the $5,000 now in the hands of Eugene M. Travis, as trustee, shall be impressed with a trust fund for the benefit of the creditors who furnished materials and performed work on the Hunter College job, or whether it should be equally distributed among all the creditors.

Section 36-a of the Lien Law of the state of New York (Consol. Laws, c. 33) provides:

"*Contractor who diverts funds guilty of larceny.* The funds received by a contractor from an owner for the improvement of real property are hereby declared to constitute trust funds in the hands of such contractor to be applied first to the payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the improvement, and to the payment of premiums on surety bond or bonds filed and premiums on insurance accruing during the making of the improvement and any contractor and any officer, director or agent of any contractor who applies or consents to the application of such funds for any other purpose and fails to pay the claims hereinbefore mentioned is guilty of larceny and punishable as provided in section thirteen hundred and two of the penal law." Added by Laws 1930, c. 859, § 18, in effect October 1, 1930.

Under such section there can be no doubt that the funds in the hands of a contractor are trust funds for the benefit of subcontractors, materialmen, etc.

Article 1, § 2, of the Lien Law, defines a contractor as follows: "The term 'contractor,' when used in this chapter, means a person who enters into a contract with the owner of real property for the improvement thereof, or with the state or a municipal corporation for a public improvement."

The rule of construction of statutes compels that all sections of law be read together to ascertain the true intent of the Legislature. Section 25-a (added by Laws N. Y. 1932, c. 627, § 8) served to clarify section 36-a. People v. Levitt (1932) 145 Misc. 621, 260 N. Y. S. 458. It is apparent that section 36-a includes a contractor engaged in a public improvement.

Section 36-a was in effect October 1, 1930. Plaintiff's contract was executed November 10, 1930, one month and ten days after the enactment of section 36-a. Both contracting parties knew of the existence of such statute. Mentzinger must have been aware that any money received from the city of New York under the said contract he held as trust funds for the benefit of the materialmen, subcontractors, etc.

It is conceded that the money paid to the Cliston Corporation was part of the said trust fund. The money paid to the Cliston Corporation can be clearly ear-marked as part of the trust fund, and its return in no wise affects its fiduciary character. Oliver v. Piatt, 3 How. 333, 11 L. Ed. 622; Van Alen v. American Nat. Bank, 52 N. Y. 1; Central National Bank v. Life Insurance Co., 104 U. S. 54, 26 L. Ed. 693; Smith v. Township Au Gres, Michigan (C. C. A.) 150 F. 257, 9 L. R. A. (N. S.) 876.

No matter when the money came into the hands of the trustee, the trust creditors are entitled to satisfy their claim if they can show that the trust fund or the property into which it was converted came into the hands of the trustee. In re Blue Bird Appliance Co. (C. C. A.) 292 F. 127; Peters v. Bain, 133 U. S. 670, 10 S. Ct. 354, 33 L. Ed. 696; City Bank of Hopkinsville v. Blackmore (C. C. A.) 75 F. 771.

The intention of the Legislature of the state of New York was to protect subcontractors, materialmen, and laborers. Contractors cannot avoid their responsibilities by making preferential payments out of trust funds and then filing petitions in bankruptcy or having involuntary petitions filed against them.

To follow the trustee's contention that the

funds should be distributed among all the creditors would nullify the very purpose of the statute, which was to distribute the specific fund to a preferred class of creditors. There would be no purpose for the Lien Law were it not that the state intended to protect the very class that the statute outlined. If the contractor attempts to deprive the lienors of their rights, the court should restrain and not help facilitate the avoidance of lawful obligations.

As to the sum of $2,010.04, which has been retained by the city of New York, no disposition can be made of that money for the reason that the city of New York is not a party to this litigation. However, as between the trustee and the Albert Pick-Barth Company, Inc., and other creditors similarly situated, who performed work on the Hunter College job, their rights as trust creditors to the fund have priority over the general creditors.

Settle findings and decree on notice.